The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Gregory M. Willis. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 51 years old, with a date of birth of 22 May 1943. For his education, plaintiff had left high school in the twelfth grade to join the Army, and he had earned his GED while in the Army. Plaintiff had taken two years of college courses in business administration and engineering, and he had a commercial pilot's license. After the Army, plaintiff's work experience was as a truck driver and in heavy equipment sales. Plaintiff began working the defendant in 1985 as a long haul truck driver.
2. In February 1991, plaintiff sustained an admittedly compensable injury by accident when he fell from his truck. As a result of this fall, plaintiff suffered strains of his neck, shoulders and elbows. He received treatment from Dr. Timothy Hooker, a family doctor at Intermediate Care in Danville, Virginia, who is board certified in pediatrics. Dr. Hooker treated plaintiff conservatively and kept him out of work for more than ten months, between February 1991 and January 1992. Plaintiff returned to work with defendant on or about 12 January 1992. He worked for about one year, with varying restrictions from Dr. Hooker.
3. On 13 January 1993, plaintiff sustained a second admittedly compensable injury by accident when he fell from his truck while filling the radiator with antifreeze. A week later plaintiff returned to Dr. Hooker for treatment. For the next two years, between January 1993 and March 1995 and continuing, Dr. Hooker has provided plaintiff with conservative treatment for a variety of symptoms, including neck pain, shoulder pain, pain in both arms, low back pain and pain in both legs. The treatment has included two extensive courses of physical therapy. As of the time of his deposition on 13 July 1995, Dr. Hooker did not know the cause for plaintiff's complaints.
4. Defendant referred plaintiff to Dr. Mahoney, an orthopedic surgeon, who examined plaintiff several times between 9 April 1993 and 8 February 1994. Dr. Mahoney referred plaintiff to two pain clinics, but both did not accept plaintiff for treatment. Dr. Mahoney also referred plaintiff for a psychological assessment; and at the time of the assessment, there was no evidence of depression. On 2 September 1993, a functional capacity evaluation was performed on a B-200 low back assessment system; and during the evaluation, plaintiff put forth good effort and was able to perform in a moderately dysfunctional category.
5. On 6 January 1994, defendant referred plaintiff to Dr. Robert Elkins, an orthopedic surgeon, for a second opinion. Dr. Elkins recommended a cervical and lumbar MRI; no MRI had been performed in the past; and on 12 January 1994, one year after his second accident, there was no significant abnormality of the spine. It was Dr. Elkins' opinion that plaintiff could return to work at light duty.
6. In January 1994, defendant offered plaintiff a job as a security guard in its terminal. Plaintiff was justified in refusing the job because it would require him to drive 120 miles, 60 miles each way, to work, and this driving was beyond his physical limitations.
7. On 8 February 1994, Dr. Mahoney performed a follow-up examination and reviewed the report of Dr. Elkins. Dr. Mahoney agreed with Dr. Elkins, and he was of the opinion that no further treatment would be beneficial to plaintiff, including physical therapy or chiropractic treatment. At this time plaintiff was not capable of returning to work at his former job with defendant as a long haul truck driver; however, plaintiff was able to return to work at light duty with restrictions of driving no more than 60 miles and not lifting more than fifteen pounds. However, it was the opinion of plaintiff's family doctor that plaintiff should not attempt to find any employment.
8. Shortly after Dr. Mahoney released plaintiff to light duty with restrictions, defendant assigned a vocational rehabilitation consultant to assist plaintiff in finding employment. The vocational consultant arranged for a job interview on 6 April 1994 for a position as a sales person at a car dealership. Plaintiff went to the interview; however, after he discussed his physical restrictions, he was not offered a job. The vocational consultant arranged a job interview on 2 May 1994 for a position as a sales person at a radio station, on 1 September 1994 and 25 January 1995 for a position as a night auditor at a hotel, and on 20 December 1994 for a position as a sales person at a mobile home dealership. Plaintiff did not attend any of the above-noted interviews. In the year after his release to return to work, plaintiff made one application for a job when he applied for employment at an oil company in Texas seven to eight months before the hearing. Other than this application, plaintiff has made no attempt to find gainful employment. Plaintiff was told by the vocational consultant that he should seek jobs through the Employment Security Commission and that he should regularly make applications for jobs. Plaintiff did not follow through on this advice. While attempting to find plaintiff a job, defendant continued to pay plaintiff temporary total disability compensation. Following 2 May 1994, plaintiff did not make a reasonable effort under the circumstances to obtain gainful employment.
9. Any continuing chiropractic treatment is not necessary in order to provide relief, provide a cure, or reduce any period of time during which plaintiff is unable to be gainfully employed. This finding is based on the opinion of Dr. Mahoney that continued chiropractic treatment is not necessary and on the fact that plaintiff has already undergone an extensive course of physical therapy.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Following 2 May 1994, plaintiff did not make a reasonable effort under the circumstances to find gainful employment; therefore, plaintiff is not entitled to continuing temporary total disability compensation from 2 May 1994 and continuing. Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762 (1993).
2. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the injury by accident of 13 January 1993. Said medical expenses shall not include any treatment for continuing chiropractic care. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for continuing temporary total disability compensation after 2 May 1994 must be, and the same is hereby, DENIED.
2. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of the injury by accident of 13 January 1993. Said medical expenses shall not include any medical expenses for continuing chiropractic care.
3. Each side shall pay its own costs, except that defendants shall pay an expert witness fee in the amount of $150.00 to Dr. Hooker, unless such fee has already been paid.
 S/ _______________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING: S/ _______________________________ COY M. VANCE COMMISSIONER
DCS:bjp